**In re CRESTCARE NURSING AND RE-HABILITATION CENTER, In Its Assumed or Common Name; Crestcare Nursing and Rehabilitation Center, LLC; Haven Care Management Services, LLC.**

No. 12–05–00167–CV.

Court of Appeals of Texas, Tyler.

Feb. 22, 2006.

Thomas H. Buchanan, Melanie S. Reyes, J. Mitchell Beard, Henderson & Julie P. Wright, for Relator.

David T. Marks, David Matthew Freeman & Charles M. Hessel, Houston, for Real–Party–In–Interest.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

This is an original mandamus proceeding. Crestcare Nursing and Rehabilitation Center, in its Assumed or Common Name, Crestcare Nursing and Rehabilitation Center LLC, and Haven Care Management

Services LLC (collectively "Crestcare") challenge a portion of a discovery order signed by Respondent, the Honorable David Brabham, Judge of the 188th Judicial District Court, Gregg County, Texas, on May 12, 2005. Crestcare contends that Respondent abused his discretion by ordering Crestcare to produce certain personnel files without first conducting an in camera review of the files. We deny the petition.

### BACKGROUND

Willa Clements, the real party in interest, filed the underlying suit alleging, in part, that Sheila Williams suffered serious bodily injuries while she resided at Crestcare Nursing and Rehabilitation Center (the "nursing home"). Clements further alleged that Williams's injuries were proximately caused by Crestcare's negligence.[1] Clements served Crestcare with requests for production, including the following that are the subject of the controversy here:

- **RFP 6.0** requesting personnel files for all nursing personnel, administrators, directors of nursing, and departmental heads who worked at the nursing home at any time from September 5, 2000 through September 9, 2003 that were created in the normal course of business and constitute business records as defined in Texas Rule of Evidence 803(6). If Williams resided on a particular wing, hall, or distinct unit, the request for nursing personnel files was limited to the files of direct care givers, including any pool or relief personnel, who worked on that particular wing or unit at any time during the specified time frame. The RFP also includes a list of representative documents included within the meaning of "personnel files."

---

1. Clements sued in her individual capacity, as representative for all wrongful death beneficiaries, and as heir at law and representative of the estate of Sheila Williams, deceased.

- **RFP 6.01** requesting job performance evaluations not produced under another RFP for all nursing personnel who worked at any time on any wing or unit where Williams resided during the time of her residency and all documentation evaluating the job performance of the director of nursing and the administrator during the time period specified.[2]
- **RFP 6.02** requesting the complete personnel file for each employee of the nursing home that Crestcare identified or designated as a person having knowledge of relevant facts in the lawsuit.
- **RFP 6.1** requesting the complete personnel file for all nursing personnel, administrators, or directors of nursing who worked at the nursing home at any time during September 5, 2000 through September 9, 2003.

Crestcare filed objections and asserted various privileges and exemptions from discovery, including "the Texas and United States Constitutions regarding rights to privacy." At Clements's request, Crestcare provided a privilege log in which it asserted, in part, that the personnel files were protected from discovery by "employee and personal privacy." Clements filed a motion to compel production, and Respondent conducted a hearing on the motion.[3]

### THE HEARING

At the hearing, Crestcare stated that it would "stand by each objection and each assertion of privilege" in its responses to the requests for production of the personnel files. In support of its privacy claim, Crestcare presented the affidavit of Paul Friesen, the current administrator at the nursing home. In his affidavit, Friesen generally described the types of information contained in the personnel files. He also stated that (1) personnel files are created with the employee's right to privacy in mind, (2) the records in the files are disclosed only to the individual employee and are never made available to the general public, and (3) the files are intended to remain privileged and confidential. Crestcare also tendered several boxes of personnel files for in camera review.[4]

Crestcare acknowledged that during a break in the hearing, Clements had agreed to certain date and wing or unit limitations on her requests for the personnel files. However, Crestcare again asserted that its employees' constitutional right to privacy prohibited production of the files. Respondent then granted Clements's motion to compel as to RFP 6.0, subject to the agreed limitations. After Respondent announced his ruling, Crestcare argued that "every file of every employee is privileged" and that Respondent was under a duty to conduct an in camera inspection of the tendered files. Clements urged that Respondent was under no duty to conduct an in camera inspection absent the identification of specific documents that Crestcare contended were privileged.

Respondent offered Crestcare an opportunity to submit for in camera review what it considered to be representative documents supporting its privacy claim. Re-

2. Crestcare admits that job performance evaluations are in the personnel files. Therefore, we refer to the requested items collectively as the "personnel files."

3. Clements does not question Crestcare's standing to assert its employees' privacy rights.

4. Respondent marked one box of the tendered files as Exhibit P–1 and delivered the box to this Court in this proceeding. The box contains personnel files for 66 employees whose surnames begin with "A" or "B."

spondent further informed Crestcare that he would not review in camera any documents unless Crestcare provided specific documents "as opposed to just en masse saying that all documents in personnel files are privileged...." Crestcare declined, reasserting that "the personnel files that we have tendered to the Court for an in camera inspection, and every document in those, are privileged and ... in particular by the Constitutional right of privacy...." Respondent then ordered production of the files and documents identified in RFP numbers 6.01, 6.02, and 6.1.[5] This original proceeding followed. On Crestcare's motion, we stayed the trial court proceedings pending our disposition of its petition.

### AVAILABILITY OF MANDAMUS

 Mandamus will issue to correct a discovery order when the mandamus record establishes that the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles. *Id.* Mandamus is appropriate to protect confidential documents from discovery. *In re Living Centers of Texas, Inc.*, 175 S.W.3d 253, 256 (Tex.2005). Mandamus is also available when a trial court fails to conduct an in camera inspection of documents if such review is critical to its evaluation of a privilege claim. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam). The party seeking the writ of mandamus has the burden of showing that the trial court abused its discretion. *In re E. Tex. Med. Ctr. Athens*, 154 S.W.3d 933, 935 (Tex.App.-Tyler 2005, orig. proceeding).

### CONSTITUTIONAL RIGHT TO PRIVACY

 A court order that compels or restricts pretrial discovery constitutes state action, which is subject to constitutional limitations. *Tarrant County Hosp. Dist. v. Hughes*, 734 S.W.2d 675, 679 n. 3 (Tex.App.-Fort Worth 1987, orig. proceeding) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Federal and state constitutions are sources of privacy interests that must be scrutinized when raised as a challenge to pretrial discovery. *Tarrant County Hosp. Dist.*, 734 S.W.2d at 678.

 The right to privacy is not expressly mentioned in either the federal constitution or our state constitution. However, the Supreme Court has held that a right of personal privacy, or a guarantee of certain areas or zones of privacy, exists under the United States Constitution. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). Similarly, the Texas Supreme Court has held that the Texas Constitution protects personal privacy from unreasonable intrusion. *Tex. State Employees Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex.1987). The term "right to privacy" is a generic term encompassing various

---

5. In its filed objections to each of the RFPs in controversy here, Crestcare stated that Clements is seeking information that is not "relevant to the subject matter of the pending litigation." At the hearing, Crestcare mentioned relevancy, stating that "if [any employees whose files were requested] didn't lay hands on this woman, we stand on our relevancy objection." Crestcare then admitted that its relevancy objection "is not subject— that is not something that we have presented to the Court to [sic] in camera inspection." Further, Crestcare agreed with Respondent that an assertion of privilege is different from saying that documents are not relevant or not discoverable for some other reason.

rights recognized in decisions of the United States Supreme Court as well as in other federal and state courts. *Tarrant County Hosp. Dist.*, 734 S.W.2d at 679. Marital relations, procreation, contraception, family relationships, and child rearing and education are among the interests that have been afforded constitutional protection. *Id.* An individual's medical records are within a zone of privacy protected by the United States Constitution. *Whalen v. Roe*, 429 U.S. 589, 601, 97 S.Ct. 869, 877, 51 L.Ed.2d 64 (1977).

The cases protecting privacy have involved at least two different kinds of interests. *Whalen*, 429 U.S. at 599, 97 S.Ct. at 876. One is the individual interest in independence when making certain kinds of important decisions, and another is the interest in avoiding disclosure of personal matters. *Id.* It is the second aspect of the right to privacy that concerns us here. This "disclosural privacy" encompasses the ability of individuals to determine for themselves when, how, and to what extent information about them is communicated to others. *Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 679 (Tex.1976). This does not mean that every publication of personal information about an individual constitutes an invasion of a constitutionally protected zone of privacy. *Id.* at 680. Nor does it mean that information within a constitutionally protected zone of privacy can never be disclosed. *See, e.g., Whalen*, 429 U.S. at 604, 97 S.Ct. at 878 (upholding state statute requiring reporting of names and addresses of all persons obtaining prescriptions for certain drugs having both a lawful and an unlawful market); *Tarrant County Hosp. Dist.*, 734 S.W.2d at 680 (holding that compelling disclosure of blood donors' identities was not an impermissible violation of constitutional right to privacy).

## LIMITING DISCOVERY

The party who seeks to limit discovery by asserting a privilege has the burden of producing evidence to support its assertions. *In re DuPont*, 136 S.W.3d at 223; *see also* TEX.R. CIV. P. 193.4(a). This rule applies when a party asserts privacy rights as a ground for limiting discovery. *Kessell v. Bridewell*, 872 S.W.2d 837, 841 (Tex.App.-Waco 1994, orig. proceeding). Merely listing a specific privilege or exemption from discovery in a privilege log is insufficient. *In re Monsanto Co.*, 998 S.W.2d 917, 926 (Tex.App.-Waco, 1999, orig. proceeding). If a party makes a prima facie showing of a privilege or an exemption from discovery and tenders documents to the trial court, the trial court must conduct an in camera inspection if the review is critical to the evaluation of the claimed privilege or exemption. *In re DuPont*, 136 S.W.3d at 223. The prima facie standard requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (citing *Tex. Tech. Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex.App.-El Paso 1994, writ denied)).

Crestcare suggests that the trial court must always conduct an in camera inspection when the party resisting discovery asserts a privacy right. According to Crestcare, the inspection is required because a person's privacy interest in the requested information must be weighed against the relevancy of such information as a matter of course before ordering the information produced. As support for its argument, Crestcare cites *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959), *Maresca v. Marks*, 362 S.W.2d 299 (Tex. 1962), and *Tilton v. Marshall*, 925 S.W.2d 672 (Tex.1996). *Crane* and *Maresca* hold that income tax returns are not wholly

privileged documents, but are subject to discovery to the extent that portions of the returns are relevant and material to the issues in the case. These cases require the trial court to personally examine the income tax returns, before ordering production, to determine which portions are relevant and material. *Maresca,* 362 S.W.2d at 300; *Crane,* 328 S.W.2d at 440. *Tilton* holds that the same rule applies to tithing records, which in many cases may be a subset of personal tax records. *Tilton,* 925 S.W.2d at 683.

Crestcare admitted at oral argument that it found no cases applying this rule to other types of personal information. Neither Crestcare's privilege log nor Friesen's affidavit makes any reference to income tax records. Therefore, the rule Crestcare cites is inapplicable here.

### CRESTCARE'S BURDEN

■■■■ Information contained in personnel files might, under some circumstances, be included within a protected zone of privacy. *See Kessell,* 872 S.W.2d at 841–42. A party asserting that privacy rights protect personnel files from disclosure must present evidence showing "a particular, articulated and demonstrable injury." *See id.* (quoting *Garcia v. Peeples,* 734 S.W.2d 343, 345 (Tex.1987)). In other words, the party must establish that it has such a privacy interest in the information contained in the files as to bar disclosure. *Kessell,* 872 S.W.2d at 842. Affidavits presented as evidence must set forth factual allegations showing that the information sought is protected by the claimed privacy interest. *In re DuPont,* 136 S.W.3d at 224. Mere conclusory allegations that documents sought are "confi-

dential" are insufficient to support a privacy claim. *See Kessell,* 872 S.W.2d at 841–42; *see also In re DuPont,* 136 S.W.3d at 224 (affidavit merely presenting global allegations that documents come within the asserted privilege has no probative value).

■■■■ Here, Paul Friesen, the nursing home administrator, stated in his affidavit that (1) personnel files are created with the individual employee's right to privacy in mind, (2) the records in the files are disclosed only to the individual employee and are never made available to the general public, and (3) the files are intended to remain privileged and confidential. These statements are merely conclusory allegations that the records are "confidential." *See Kessell,* 872 S.W.2d at 841–42. As such, the statements have no probative value and do not constitute a prima facie showing that the personnel files are within a constitutionally protected zone of privacy. *See In re DuPont,* 136 S.W.3d at 224; *Kessell,* 872 S.W.2d at 841–42. Friesen also generally describes the information contained in the personnel files. However, Friesen's description does not include facts that suggest any of the described information is within a constitutionally protected zone of privacy. Therefore, the description does not aid Crestcare.[6]

Friesen's affidavit does not provide "a minimum quantum of evidence to support a rational inference" that Crestcare's employees have such a privacy interest in the personnel files as to compel nondisclosure. Consequently, Respondent did not abuse his discretion in ordering disclosure of the files without reviewing them in camera. Nonetheless, Respondent offered Crestcare the opportunity to present representative documents from the tendered files

---

**6.** Friesen states that employee "personal health information" is in the personnel files. Although medical records are within a constitutionally protected zone of privacy, Clements said during the hearing that she does not want employee medical information. Thus, no in camera review of documents including this information was necessary.

for in camera inspection. In doing so, Respondent "went above and beyond what was required of him." *See In re Monsanto,* 998 S.W.2d at 929 (observing that Respondent viewed documents in camera despite Relator's failure to make prima facie showing of privilege).

### CONCLUSION

Respondent did not abuse his discretion by refusing to conduct an in camera review of the files.[7] Accordingly, the petition is *denied* and our stay is lifted.

---

7. We express no opinion about whether Respondent would have been required to examine all tendered files "en masse" if Crestcare had made a prima facie showing and an in camera review had been necessary to the evaluation of Crestcare's privacy claim.