**Denied and Opinion Filed this 22nd day of January 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01498-CV

### IN RE FISHER & PAYKEL APPLIANCES, INC., Relator

**Original Proceeding from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-00175**

# OPINION

Before Justices Moseley, Lang-Miers, and Evans
Opinion by Justice Evans

Relators filed this mandamus proceeding after the trial court ordered relator, Fisher & Paykel Appliances, Inc., to produce certain documents that relator contends are not subject to discovery. We deny relief.

#### BACKGROUND

This is a wrongful death and products liability case brought by real parties in interest Wayne Webb, individually and as a representative of the estate of Rosemary Webb, Michael Webb and David Webb. Real parties allege that relator, Fisher & Paykel, manufactured a defectively designed and unreasonably dangerous clothes dryer that caused a fire that destroyed the Webb's home and that led to the death of Rosemary Webb.

In discovery, real parties propounded a request for production of documents that required Fisher & Paykel to "[p]roduce all correspondence from Fisher & Paykel or anyone on its behalf

to any governmental agency regarding this occurrence." Real parties did not define the term "occurrence." Fisher & Paykel objected to this request for production of documents as follows:

> Defendant objects to this request because correspondence between this Defendant and certain governmental agencies are privileged and protected from discovery under the self-critical analysis privilege. Defendant further objects to this request because it seeks information and documents protected from disclosure/production. The documents are confidential, privileged, trade secrets and proprietary, protected under Texas and federal common law, Texas state law, and under authority in Section 6 of the CPSA, 15 U.S.C. § 2055, the Trade Secrets Act, 18 U.S.C. § 1905 and the Freedom of Information Act, 5 U.S.C. § 552(b).

Real parties in interest moved to compel. Fisher & Paykel responded and identified three reports that it contends were covered by this objection. Fisher & Paykel filed these three reports with the United States Consumer Product Safety Commission ("CPSC") regarding incidents related to the safety of its gas clothes dryers. In its brief responding to the motion to compel, Fisher & Paykel argued that these three documents were covered by the self-critical analysis privilege. Fisher & Paykel also referred in its briefing to the trade secret privilege, attorney work product privilege, and Rule 502 of the Texas Rules of Evidence. Fisher & Paykel provided an affidavit supporting its claim of "privilege," but did not submit a withholding statement and privilege log at that time.

The trial court conducted a hearing on the motion to compel. Although the hearing centered largely on Fisher & Paykel's claim that the self-critical analysis privilege protected the documents from disclosure, Fisher & Paykel briefly argued that some portions of the documents were protected from discovery because they contained work product and asked for a ruling on that claim of privilege. Fisher & Paykel still had not at that point served or filed a withholding log or otherwise identified any specific portion of the documents claimed to be withheld on the grounds of work product privilege.

Upon conclusion of the hearing, the trial court ordered Fisher & Paykel to tender all "responsive documents" for review *in camera.* Fisher & Paykel complied, submitted the three

reports *in camera,* filed a withholding statement and privilege log, and simultaneously moved for reconsideration arguing for the first time that the documents were not responsive to the request for production. The trial court considered the additional briefing, the withholding statement and privilege log, the additional evidence submitted by Fisher & Paykel, and reviewed the documents *in camera*. Upon completion of its *in camera* review, the trial court ordered Fisher & Paykel to produce the documents to real parties.

## STANDARD OF REVIEW

To obtain mandamus relief, the relator must show both that the trial court has clearly abused its discretion and that it has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). A trial court has "no 'discretion' in determining what the law is or applying the law to facts." *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840). "A party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error." *In re Ford Motor Co.,* 211 S.W.3d 295, 298 (Tex. 2006) (per curiam) (orig. proceeding); *Walker*, 827 S.W.2d at 843 (Tex. 1992); *In re Blackstone Med., Inc.*, 372 S.W.3d 316, 317 (Tex. App.—Dallas 2012, orig. proceeding). Accordingly an appeal is an inadequate remedy when the court erroneously orders disclosure of privileged information.

## RESPONSIVENESS

Fisher & Paykel first argues that just thirteen lines of the total 413 pages of the three documents at issue are responsive to the request for production and, thus, the trial court's order requiring that all three reports to be produced in their entirety is overly broad. Fisher & Paykel has waived this argument by failing to assert it in a timely fashion in the trial court. Fisher & Paykel first raised its non-responsiveness argument in the trial court in its supplemental briefing

following the trial court's order requiring Fisher & Paykel to produce the documents for *in camera* inspection. Prior to that time, Fisher & Paykel's efforts centered around avoiding the production of the three reports based on privilege arguments. Fisher & Paykel did not object to real parties' request for production as overly broad, nor did it assert that the evidence sought was irrelevant or inadmissible. Fisher & Paykel did not oppose the motion to compel on the grounds that the request for production was overly broad. Indeed, Fisher & Paykel tendered the three documents to the trial court for *in camera* review when the trial court ordered the *in camera* submission of "all responsive documents."

"In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . ." TEX. R. CIV. P. 192.3(a). The information sought must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The party objecting to discovery "must present any evidence necessary to support the objection." TEX. R. CIV. P. 193.4(a). "Whether discovery is overly broad in products liability cases depends on whether the order covers products relevant to the case and is reasonable in its scope." *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009).

The request for production at issue is narrowly tailored calling only for correspondence with any government agency regarding the occurrence at issue in the case. Throughout the proceedings below until after the trial court issued its order, Fisher & Paykel never took the position that the three reports it now seeks to withhold were unrelated to the occurrence at issue in this case. "A party is required to comply with written discovery to the extent no objection is made." *Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 486 (Tex. App.—Dallas 2011, pet. granted) (citing TEX. R. CIV. P. 193.2(b) & comment 2). To object to a discovery request, the responding party must make a timely objection in writing and "state specifically the legal or factual basis for the objection and the extent to which the party is refusing to comply with the request." *In re CI*

*Host, Inc.*, 92 S.W.3d 514, 516 (Tex. 2002) (citing TEX. R. CIV. P. 193.2(a)). A trial court does not clearly abuse its discretion in ordering the production of documents when the party from whom production is sought does not meet its burden to support its objection under the rules of civil procedure governing discovery. *Id.* Having failed to present a timely objection grounded in responsiveness to the trial court, Fisher & Paykel cannot contend on mandamus that trial court clearly abused its discretion in ordering the production of the documents because they are not responsive. The trial court did not clearly abuse its discretion in its ruling with regard to Fisher & Paykel's relevance objection.

## SELF-CRITICAL ANALYSIS PRIVILEGE

In the trial court, Fisher & Paykel resisted discovery contending that the documents at issue are protected from discovery under the self-critical analysis privilege. While the Consumer Product Safety Act, 15 U.S.C. § 2051, provides for the protection of a reporting entity's trade secrets and prevents the CPSC from divulging the contents of the reports made under the Act, there is no statutory provision creating a general privilege for reports mandated under the statute. *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 682 (N.D. Ind. 1985) (nothing in Consumer Product Safety Act prevents disclosure of information submitted to the CPSC in the context of civil discovery requests by a private litigant). Accordingly, there is no statutory self-critical analysis privilege.

The absence of statutory protection for reports to the Consumer Product Safety Act is also fatal to any argument that Rule 502 of the Texas Rule of Evidence provides a basis for the recognition of a self-critical analysis privilege. Rule 502 addresses reports that are "required by law to be made" and provides that a "person, corporation, association, or other organization or entity, either public or private" making such a report "has a privilege to refuse to disclose . . . the report, *if the law requiring it to be made so provides.*" TEX. R. EV. 502 (emphasis added). While

the Consumer Product Safety Act prevents the agency from disclosing the contents of reports under the Act, because the Consumer Product Safety Act does not provide the person making a report under the Consumer Product Safety Act with a privilege against disclosure, Rule 502 of the Texas Rules of Evidence has no application.

Fisher & Paykel further urges, however, that the absence of a federal statutory privilege protecting self-critical analysis does not put the question of the existence of such a privilege to rest and advocates the recognition of a self-critical analysis privilege under Texas common law. Admitting that to date Texas courts have not acknowledged a self-critical analysis privilege, Fisher & Paykel cites a very few federal cases recognizing a self-critical analysis privilege based on concerns for improved safety and uninhibited communications with regulatory authorities. Fisher & Paykel analogizes reports to the CPSC to the medical peer review process which is privileged under the Texas Occupations Code. *See* TEX. OCC. CODE § 160.001 *et seq.*

Only privileges grounded in the Texas Constitution, statutes, the Texas Rules of Evidence, or other rules established pursuant to statute are recognized in Texas. *Abbott v. GameTech Int'l, Inc*., 03-06-00257-CV, 2009 WL 1708815, at \*6 (Tex. App.—Austin June 17, 2009, pet. denied) (citing TEX. R. EV. 501). It is generally not the role of intermediate courts of appeals to declare new common law discovery privileges. While Fisher & Paykel is correct in pointing out that the records and determinations of medical peer review committees are privileged under Texas law, the existence of this privilege actually undercuts Fisher & Paykel's argument that a general self-critical analysis privilege should also be found to exist under Texas common law. The existence of a statutory discovery privilege in the context of medical peer review committees demonstrates that when it deems the situation appropriate, the Texas Legislature can and will create a privilege. The Court declines to write into existence a common

law self-critical analysis privilege that both the Congress—at least regarding the Consumer Product Safety Act—and the Texas Legislature have declined to create.

**ATTORNEY WORK PRODUCT PRIVILEGE**

*Assertion of Privilege Not Waived*

Fisher & Paykel's privilege arguments in the trial court evolved. Initially its objections, briefing, affidavits, and privilege logs were not clear about which privilege Fisher & Paykel sought to assert with regard to each document. Fisher & Paykel did argue briefly in its initial response to real parties' motion to compel that unspecified portions of its reports to the CPSC were attorney work product. As the case has progressed, Fisher & Paykel has claimed more documents fall into this category and that some of the documents that are the subject of this petition are protected as core attorney work product. Real party argues that Fisher & Paykel's evolution in its assertion of work product privilege amounted to a waiver of the privilege, but cites only cases in which the party resisting discovery failed to identify documents withheld as privileged. *In re Anderson*, 163 S.W.3d 136, 141 (Tex. App.—San Antonio 2005, orig. proceeding) (party resisting discovery failed to identify any document as being withheld until after its existence was discovered during depositions); *In re Soto*, 270 S.W.3d 732, 735 (Tex. App.—Amarillo 2008, orig. proceeding [mand. denied]) (complete failure to comply with rules of Civil Procedure governing assertion of privilege). In this case, Fisher & Paykel's initial objection did assert that the documents were privileged for a number of reasons including attorney work product privilege; it has simply increased its focus on that theory as the basis of the privilege claimed as proceedings progressed. The Texas Rules of Civil Procedure are designed to avoid waivers of privilege. *See generally In re Lincoln Elec. Co.*, 91 S.W.3d 432, 436 (Tex. App.—Beaumont 2002, orig. proceeding [mand. denied.) ("[I]t would appear that significant effort was made by the promulgators of the Rules to avoid waiver by a party when

–7–

privileged materials or information may be at issue."); *In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 918 (Tex. App.—Dallas 2006, orig. proceeding [mand. denied]) (same regarding rule 193.3). Accordingly, we conclude that Fisher & Paykel's late increased focus on attorney work product as the precise basis of its claim of privilege and more detailed identification of which documents it contended fell within that privilege was not fatal to its assertion of the attorney work product privilege.

We turn then to whether the trial court clearly abused its discretion by ordering production of documents that relators claimed were privileged attorney work product. Fisher & Paykel contends that, because the real parties' motion to compel did not seek a ruling on its attorney work product privilege claim, the trial court clearly abused its discretion by ordering the documents produced. We begin by addressing that argument. The Texas Rules of Civil Procedure provide that "any party may at any reasonable time request a hearing on an objection or claim of privilege. . . ." TEX. R. CIV. P. 193.4(a). At the hearing on the motion to compel, Fisher & Paykel itself sought a ruling on the attorney work product privilege from the trial court by "encourag[ing] the court to look at the correspondence and some of the documents attached as work product . . ." and by requesting that the trial court conduct an *in camera* inspection of the documents. Disclosure of the documents to the CPSC was the entire basis of real parties' motion to compel, which formed the basis of the trial court's ruling. In ordering the production of the documents, the trial court necessarily reached and overruled the attorney work product privilege objection. Given Fisher & Paykel's request for *in camera* review of its documents for the court's consideration of the work product privilege, the trial court did not clearly abuse its discretion merely by considering and ruling on the attorney work product privilege as requested.

*Selective Waiver Doctrine*

Fisher & Paykel further argues the trial court clearly abused its discretion to the extent that it ruled that Fisher & Paykel had waived attorney work product protection of the documents disclosed to the CPSC. Although it never identifies the doctrine by name, it appears that Fisher & Paykel is urging the court to adopt the doctrine of selective waiver, which holds that to the degree a party has been compelled to produce privileged documents to a government agency, the privilege remains despite the disclosure to the agency.

The selective waiver doctrine originated in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). In that case, Diversified's board of directors hired a law firm to determine whether the company had established an illegal slush fund to bribe purchasing agents to accept inferior goods. The Securities and Exchange Commission became interested in the investigation and subpoenaed the law firm's final report to the board of directors. In subsequent litigation one of the companies whose purchasing agents had allegedly been bribed sought to compel Diversified to produce the final report arguing any attorney-client privilege that attached to the report was waived when Diversified turned the materials over to the Securities and Exchange Commission. Sitting *en banc*, the Eighth Circuit held that disclosure of the attorney-client privileged materials to the Securities and Exchange Commission pursuant to a subpoena did not waive the privilege because "to hold otherwise may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers." *Diversified,* 572 F.2d at 611.

The majority of courts considering selective waiver have rejected the Eighth Circuit's approach, however. *See generally* Colin P. Marks, *Corporate Investigations, Attorney-Client Privilege, and Selective Waiver: Is A Half-Privilege Worth Having at All?*, 30 SEATTLE U. L.

REV. 155, 166 (2006.)  In *Permian Corp. v. United States,* 665 F.2d 1214 (D.C. Cir. 1981), a company turned over certain documents drafted by counsel concerning the legality of the company's crude oil pricing practices to the Securities and Exchange Commission, at the request of the Securities and Exchanges Commission, in an effort to expedite the Securities and Exchange Commission's approval of a registration statement in connection with a merger.   The court declined to apply the doctrine of limited waiver stating, "the client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."  *Permian*, 665 F.2d at 1221. The court noted that to adopt a selective waiver exception would effectively transform the attorney-client privilege into a tactical litigation tool, which is not a purpose for which the privilege was designed. *Id.*; *see also In re Steinhardt Partners*, 9 F.3d 230, 236 (2d Cir. 1993) (stating that "selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage").

In the following years, most courts considering the issue rejected the concept of selective waiver.   Many of these decisions focused on the adversarial nature of the relationship between the government and the regulated party and concluded that in such a relationship it is illogical to argue that any privileged materials disclosed retain their privileged status.  *United States v. Mass. Inst. of Tech*., 129 F.3d 681, 686 (1st Cir. 1997)   (where government agency is a potential adversary, "work product protection is deemed forfeit"); *In re John Doe Corp*., 675 F.2d 482, 489 (2d Cir. 1982) (agreeing with the *Permian* court's reasoning); *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1425 (3rd Cir. 1991) ("selective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending

the privilege beyond its intended purpose"); *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988) ("[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege."). Although some federal courts distinguish between the attorney-client privilege and the attorney work product privilege in their selective waiver jurisprudence, the Sixth Circuit and Tenth Circuit have rejected selective waiver in both contexts. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306-07 (6th Cir 2002) (attorney-client and work product privileges were not intended "to protect conversations between the client and the government, i.e., an adverse party"); *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) ("Moreover, the purpose of the work-product doctrine is to enable counsel to prepare a case in privacy. As other circuits have indicated, selective waiver does little to further this purpose and in some cases, may instead encourage counsel to conduct investigations with an eye toward pleasing the government."); *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter."); *S.E.C. v. Brady*, 238 F.R.D. 429, 440-41 (N.D. Tex. 2006) ("[T]he Fifth Circuit has yet to adopt the selective waiver doctrine. Moreover, this court is persuaded by the reasoning of the great weight of authority which has declined to adopt the selective waiver doctrine."); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 322, 330 (N.D. Ill. 2010*)* ("Here, the CPSC is clearly an adversary of Spin Master."), *aff'd*, 654 F.3d 748 (7th Cir. 2011)

Selective waiver under Texas law is mentioned in only one case. In *In re BP Products North America, Inc*., 263 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2006, no pet.), the relator argued the methodology for the calculation of its reserves for estimated liabilities related to an explosion at an oil refinery should be protected as attorney work product despite the fact that the relator had been required to disclose the amount of the reserve to the Securities and Exchange Commission. In dictum, the court announced, "disclosure can operate as a waiver;" however, the court declined to find waiver because the relator had disclosed only the reserve figure to the Securities and Exchange Commission and not the method of calculating the figure. *Id.* at 117. Accordingly, the court did not reach the issue of selective waiver.

This Court concludes that the weight of authority does not favor recognition in Texas of a doctrine of selective waiver of privilege, as more recent federal opinions have pointed out. *See Brady*, 238 F.R.D. at 440-41; *In re Aqua Dots Prods. Liab. Litig*., 270 F.R.D. at 330 (declining to recognize selective waiver resulting from disclosure to CPSC). First, communications compiled expressly for the purpose of responding to a mandatory government reporting requirement should not be covered by the selective waiver doctrine because as to those documents, the party making the disclosure and the government agency are in an adverse relationship. *Columbia*, 293 F.3d at 306-07; *Aqua Dots*, 270 F.R.D. at 330. Thus, if an attorney prepares a narrative or analysis specifically for a report that is submitted to a regulator, even if that narrative includes a discussion of litigation or potential claims or incidents that the entity is required to report to its regulator, the adversarial nature of the proceeding dictates that it is not a communication protected by either the attorney-client or work product privilege.

Second, the mere fact that in compiling a response to a regulatory inquiry or mandate an attorney selects and transmits documents to a regulator does not transform ordinary business documents into work product. Thus, documents transmitted to a regulator as part of an entity's

mandatory reports are not protected from disclosure simply because an attorney choses which documents or other materials to produce to the regulator or because an attorney prepares or compiles portions of the report to the regulator. Work product "is not an umbrella for materials assembled in the ordinary course of business." *Evans v. State Farm Mut. Auto. Ins. Co.*, 685 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Accordingly, the trial court did not clearly abuse its discretion in ordering production of the documents. We **DENY** the relators' petition for writ of mandamus.

/David Evans/
DAVID EVANS
JUSTICE

131498F.P05