

NUMBERS 13-14-00713-CV & 13-14-00714-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

IN RE NATIONAL LLOYDS INSURANCE COMPANY

On Petition for Writ of Mandamus.

MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

Relator, National Lloyds Insurance Company ("National Lloyds"), filed a petition for writ of mandamus in the above cause numbers through which it contends that the trial court abused its discretion by: (1) ordering National Lloyds to produce irrelevant "management reports and accompanying emails," and (2) sanctioning National Lloyds for refusing to produce the reports. The trial court has ordered National Lloyds to produce fifteen categories of management reports and associated emails that are responsive to specific requests for production pertaining to the hail litigation that is the subject of this lawsuit. National Lloyds neither identified these reports and emails in its four separate

responses to requests for production nor lodged any objections to the production of such documents, and it was only after the documents had been described and identified by National Lloyds' own witnesses through deposition testimony that National Lloyds first contended that the requests were overbroad and the documents were irrelevant. Accordingly, as will be discussed more fully herein, we deny the petition for writ of mandamus.

## I. BACKGROUND

All insurance coverage cases stemming from two severe hail storms that struck Hidalgo County on or about March 29, 2012 and April 20, 2012 were transferred to a single multidistrict litigation pretrial court in the 206th District Court of Hidalgo County for consolidated pretrial proceedings. The cases were consolidated for pretrial purposes because one or more significant weather events occurring in close proximity formed the framework of the litigation and the litigation involved similar allegations regarding insurance coverage claims-handling and business practices.

This original proceeding arises from litigation over property damage claims made against National Lloyds as a result of these hail storms. The plaintiffs in the underlying cases, real parties herein,[1] alleged that National Lloyds violated the Texas Insurance Code by, inter alia, refusing to pay their claims without conducting reasonable investigations and by failing to affirm or deny coverage of the claims or submit a reservation of rights within a reasonable period of time. The plaintiffs further alleged that their experiences were not "isolated case[s]" and that the "acts and omissions" that

---

[1] Plaintiffs and real parties in interest herein are multidistrict litigation plaintiffs represented by the Mostyn Law Firm in MDL Nos. 13-0123 and 13-0130, *In re March 29, 2012 and April 20, 2012 Hail Storm Litigation*, pending in the 206th Judicial District Court of Hidalgo County, Texas.

2

National Lloyds committed in these cases, or similar acts and omissions, occur "with such frequency that they constitute a general business practice" with regard to handling these types of claims. According to plaintiffs, National Lloyds' "entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders."

On January 14, 2014, the pretrial court, in accordance with recommendations from a discovery special master, adopted "Revised Master Discovery" for the MDL residential cases. This Revised Master Discovery included a single set of institutional discovery requests directed to each insurer, including National Lloyds. The plaintiffs served the institutional requests for production on National Lloyds on March 11, 2014. These institutional requests included the following:

> 11. All documents reflecting summaries of total payments made by Defendant on claims for claims arising out of the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012.
>
> 12. All documents regarding the generalized assessment, review, evaluation and/or summary of Defendant's handling of claims arising out of the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012.
>
> 13. Any document general in nature which applies to more than one claim created, gathered, or reviewed by Defendant relating to Hidalgo County hail storm claims occurring on or about March 29, 2012 and/or April 20, 2012, including any analysis of the total amount paid on claims, time open, responsiveness, compliance with company policies and procedures, compliance with Texas Insurance Code, the number of reopened claims, the reason for reopening the claim, and the total amount paid on reopened claims. This request includes any follow-up documents.

On April 25, 2014, National Lloyds served plaintiffs with its Objections and Responses to the institutional requests for production. In these Objections and Responses, National Lloyds objected to requests eleven, twelve, and thirteen on grounds

3

that the burden or expenses of the proposed discovery outweighed its likely benefit. National Lloyds also objected to requests twelve and thirteen on grounds that the requests sought matters protected by the consulting expert and testifying expert privileges. With regard to request eleven, National Lloyds stated that "to the extent responsive documents are located," National Lloyds would supplement. With respect to requests twelve and thirteen, National Lloyds stated that there were "none."

On May 9, 2014, National Lloyds served plaintiffs with its First Amended Objections and Responses to the institutional requests for production. With respect to request eleven, National Lloyds reasserted its previous objections and assertions of privilege but produced Bates-labeled documents stamped as NLIC Hidalgo 000134 through NLIC Hidalgo 000483. With respect to requests twelve and thirteen, National Lloyds reiterated its objection based on burdensomeness, omitted its previous objection regarding consulting and testifying experts, added an objection regarding attorney-client and work product privileges, and stated that there were no responsive documents.

On June 17, 2014, National Lloyds served plaintiffs with its Second Amended Objections and Responses to the institutional requests for production. These objections and responses were identical to National Lloyds' First Amended Objections and Responses with respect to requests eleven, twelve, and thirteen.

On September 30, 2014, National Lloyds served plaintiffs with its Third Amended Responses to the institutional requests for production. For requests eleven, twelve, and thirteen, National Lloyds omitted all of its prior objections and assertions of privilege and simply responded "none" to each of these requests.

The parties engaged in various discovery battles heard by the special discovery master and the trial court. The plaintiffs filed two separate motions to compel against National Lloyds. After hearings, the special master entered specific and detailed recommendations that the motions to compel be granted, and the trial court subsequently granted both motions by separate orders on July 16, 2014 and July 22, 2014. Of particular significance to this original proceeding, at a hearing on June 18, 2014, National Lloyds withdrew its objections to the institutional requests for production.

On October 29, 2014, plaintiffs filed a "Motion to Enforce the Court's Prior Orders Against [National Lloyds], Motion to Compel Defendants to Produce Responsive Documents to Requests for Production, and Motion for Costs." Through this motion, plaintiffs requested that the trial court enforce its prior orders of July 16, 2014 and July 22, 2014, adopt the recommendations from the special master, and require National Lloyds to supplement its discovery responses. One of the special master's recommendations noted, in relevant part, that it "was agreed to by Defendant that Defendant shall withdraw all other objections to Institutional Interrogatories and Requests for Production."

The plaintiffs' motion to enforce stated that plaintiffs had deposed Paul Boswell, corporate representative for National Lloyds, on October 22 and 23, 2014, and "became aware, for the first time, of the existence of discoverable documents" that had not been produced in compliance with the master discovery requests. Boswell testified regarding several types of documents that had not been identified or produced in discovery, including Excel accounting reports delineating the claims filed as a result of the Hidalgo

5

County hailstorms, and institutional job descriptions utilized to determine specific employees' job duties and responsibilities.

At issue in this original proceeding, Boswell testified that National Lloyds ran several different reports which were generated in real time, and which were sent to the employee generating the request in PDF format by email. Boswell testified that, for instance, outstanding claims reports could be run on "hailstorm claims," and claims examiner reports could be run showing the outstanding claims for each claims examiner. Boswell testified that he ran outstanding claims reports and claims examiner reports and used these reports to manage his reserves and to ensure his compliance with financial requirements for National Lloyds. The reports could be used to see if a claims examiner was being efficient or handling their claims timely. Boswell testified that he sent the reports to managers so that they could use them to meet with their associates as "part of the process in the management of the claims." Boswell testified that the reports are historical in nature and are not retained so there is no ability to print past reports. Boswell testified that the majority of the reports provide the user with information related to specific claim numbers. Based on Boswell's testimony, in part, plaintiffs requested the court to enforce its prior orders requiring National Lloyds to produce relevant documentation in response to their requests for production, and further requested that the court assess costs against National Lloyds due to its failure to respond to the master discovery requests and its failure to comply with the trial court's former orders.

National Lloyds filed a response to the motion to enforce. In addition to addressing matters not at issue in this original proceeding, National Lloyds essentially requested that the trial court defer the matters raised by plaintiffs' motion to enforce to the special master.

6

National Lloyds' response stated that the plaintiffs had identified three categories of reports related to Hidalgo County hailstorms and attached to emails sent or received by National Lloyds employees, and that "[s]ince that hearing, and the deposition of Mr. Boswell, National Lloyds has been able to locate versions of these reports and others that are delivered to email recipients in .pdf format." National Lloyds further asserted that it had located fifteen different reports that fell within this category. According to National Lloyds, nine of the reports provide the user with specific claim numbers; however, the reports could not be created for a specific county or date of loss and most of the reports were not historically accurate. Due to National Lloyds' own record-keeping decisions, these management reports apparently include and comingle information about Hidalgo County hail claims along with other claims. By affidavit in support of National Lloyds' response, Boswell averred that he did not use these reports to manage the Hidalgo County hail claims. Also by affidavit, another National Lloyds' employee, Denise Griffin, testified that only one report, unrelated to claims, could be run by county. Thus, according to National Lloyds, because the reports could not be run by a particular date of loss or county, "the reports are not specific to Hidalgo County hail claims, or Hidalgo County hail claims in litigation." National Lloyds thus claimed that, "because *In re National Lloyds Insurance Company*[2] generally limits the discovery of information related to claims not in

_____

[2] Both in the trial court and in this original proceeding, National Lloyds cites *In re National Lloyds Insurance Company*, 449 S.W.3d 486, 487 (Tex. 2014) (orig. proceeding) (per curiam), in support of its allegations that the order at issue requires the production of irrelevant information. In that case, the Texas Supreme Court held that a trial court abused its discretion in ordering the defendant insurer to produce unrelated third-party claim files. *Id.* at 487. In so holding, the supreme court stated that it "failed to see how National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of conduct with respect to Erving's undervaluation claims at issue in this case." *Id.* at 489. Although National Lloyds asserts that our resolution here is controlled by this case, we disagree. In *In re National Lloyds*, the insurer timely objected to the requests for production on grounds that they were overbroad, unduly burdensome, and sought information that was not relevant or calculated to lead to the discovery of admissible evidence, *see id.* at 488, and National Lloyds did not timely assert these objections

7

litigation to establish wrongdoing in a litigated claim there are questions as to the relevance of this other information." *See* 449 S.W.3d at 487. National Lloyds further stated that it "re-asserts its relevancy, overbroad, and unduly burdensome objections as they relate to the production of information related to claims of third parties"; however, as discussed herein, National Lloyds had not previously raised objections pertaining to relevancy or overbreadth of the requests for production.

The trial court held a hearing on the motion to enforce on November 4, 2014. At the hearing, plaintiffs argued that, to the extent that the reports included information regarding third-party claims, the reports could be redacted to alleviate third-party privacy concerns. National Lloyds rejected the concept that the reports could be redacted on grounds that one of its employees would have to examine the reports and "go claim by claim and find out if that is a Hidalgo County hail claim or not and then redact it out."

On November 12, 2014, the trial court granted the motion to enforce in pertinent part[3] as follows:

> Plaintiffs' motions to enforce the Court's prior orders requiring Defendant National Lloyds Insurance Company . . . to provide discovery and to compel Defendant National Lloyds to produce documents responsive to Plaintiffs' request for production are GRANTED, and Defendant National Lloyds is hereby ORDERED to produce the following documents and information to Plaintiffs on or before Friday, November 14, 2014.
>
> . . . .

---

herein. Moreover, in *In re National Lloyds*, an individual plaintiff sought the discovery of unrelated third-party claim files, *see id.* at 487, but in this case plaintiffs seek the production of documents expressly limited to "claims "arising out of" or "relating to" "the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012."

[3] The trial court's order also required the production of various other categories of documents, such as accounting reports, Texas Department of Insurance documents and correspondence, and field and scope notes for plaintiffs' claims. In this original proceeding, National Lloyds only contests the production of the management reports and emails.

(2) Management Reports and Emails – National Lloyds is ordered to produce all emails, reports attached to emails, and any follow-up correspondence and information related to those reports which were sent or received by a National Lloyds employee or any affiliated adjusting company employees.

. . . .

Pursuant to Rule 215 of the Texas Rules of Civil Procedure, Defendant National Lloyds is further ORDERED to pay Plaintiffs' reasonable expenses incurred in obtaining this order, including reasonable and necessary attorney's fees caused by National Lloyds' failure to comply with this Court's prior Orders Adopting Special Master Roberto Ramirez Recommendations No. 9 and No. 11 dated July 16, 2014 and July 22, 2014. The reasonable expenses caused by National Lloyds' failure are attorney fees in the amount of $15,726.25. National Lloyds is ordered to pay $15,726.25 to Plaintiffs' counsel on or before Monday, December 15, 2014. The Court finds that National Lloyds' failure to obey the Court's prior discovery orders was not substantially justified and that the aforementioned sanctions are just and appropriate under the circumstances and pursuant to Rule 215 of the Texas Rules of Civil Procedure.

At this time, the Court shall hold in abeyance all further orders related to relief that Plaintiffs may be justly entitled to with regard to Defendant National Lloyds noncompliance with Court orders dated July 16, 2014 and July 22, 2014.

This original proceeding ensued. The Court requested and received a response to the petition from the real parties in interest and further received a reply thereto from National Lloyds.

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

9

A trial court clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by the analysis of principles rather than the application of simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). We evaluate the benefits and detriments of mandamus review and consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam); *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (per curiam); *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). Specifically, for example, a party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the

record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding).

### III. SCOPE OF DISCOVERY

The scope of discovery includes any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information is reasonably calculated to lead to the discovery of admissible evidence. TEX. R. CIV. P. 192.3; *In re CSX Corp.*, 124 S.W.3d at 152; *see In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009); *see In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488; *In re HEB Grocery Co.*, 375 S.W.3d 497, 500 (Tex. App.—Corpus Christi 2012, orig. proceeding). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401.

Generally, the scope of discovery is within the trial court's discretion. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (per curiam); *In re CSX Corp.*, 124 S.W.3d at 152. However, a party's discovery requests must show a reasonable expectation of obtaining information that will aid in the resolution of the dispute. *In re CSX Corp.*, 124 S.W.3d at 152. Therefore, discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d at 713. Accordingly, discovery requests must not be overbroad. *See, e.g., In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 669–70 (Tex. 2007) (per curiam*); In re CSX Corp.*, 124 S.W.3d at 153. "A specific request for discovery reasonably tailored to include only

11

matters relevant to the case is not overbroad merely because the request may call for some information of doubtful relevance. *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam). Significantly, whether a request for discovery is overbroad is distinct from whether it is burdensome or harassing. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d at 670. "Overbroad requests for irrelevant information are improper whether they are burdensome or not." *Id.*

## IV. OVERBREADTH AND RELEVANCE

In its first issue, National Lloyds asserts that the trial court abused its discretion in ordering it "to produce all management reports and accompanying emails used to manage its internal financial and personnel information when those reports admittedly are irrelevant to an insured's claim that they were underpaid on their hailstorm damage."[4] National Lloyds contends that the trial court's order requiring the production of "irrelevant management reports" and associated emails is overbroad and that the real parties' demands represent an unreasonable fishing expedition. National Lloyds contends that the trial court has compelled production of "not only information concerning unrelated claims, but financial, business, and other irrelevant information spanning the entirety of National Lloyds as a company and the 12 states in which it operates."[5] National Lloyds contends that these requests are overbroad because they implicate fifteen different types

---

[4] National Lloyds states these documents are "admittedly irrelevant," apparently based on affidavit testimony from its own corporate representative, Boswell. The plaintiffs nowhere contend or "admit" that the documents are irrelevant. Rather, plaintiffs expressly and vociferously contend that these reports are directly relevant to how the hailstorm claims at issue were being managed or mismanaged.

[5] National Lloyds does not support this statement in its petition for writ of mandamus with any record citations regarding evidence concerning this claim. Plaintiffs, in turn, point out that elsewhere in the record, National Lloyds asserted that "National Lloyds is a small carrier, employing ONE vice-president of claims operating ONE claims department with only TWENTY employees who are each located in ONE office in Waco, Texas." (Emphases in the original).

12

of reports concerning the internal management of its personnel and finances that have nothing to do with National Lloyds' handling of any of the individual plaintiffs' claims. In response, plaintiffs assert, inter alia, that National Lloyds has waived these objections and arguments by failing to assert them in a timely manner.

Texas Rule of Civil Procedure 193 governs responses and objections to written discovery. *See* TEX. R. CIV. P. 193. Rule 193 imposes a duty upon parties to make a "complete response" to written discovery "based upon all information reasonably available," subject to objections and privileges. *Id.* R. 193 cmt. 1; *see In re Summersett*, 438 S.W.3d 74, 80 n.4 (Tex. App.—Corpus Christi 2013, orig. proceeding [mand. denied]). A party may object to written discovery only if a good faith legal and factual basis for the objection exists at the time the objection is made. TEX. R. CIV. P. 193.2(c). To object to a discovery request, the responding party must make a timely objection in writing and "state specifically the legal or factual basis for the objection and the extent to which the party is refusing to comply with the request." *In re CI Host, Inc.*, 92 S.W.3d 514, 516 (Tex. 2002) (orig. proceeding); *Bielamowicz v. Cedar Hill I.S.D.*, 136 S.W.3d 718, 723 (Tex. App.—Dallas 2004, pet. denied). If the party objects to part but not all of a production request, the party must comply with the part to which it did not object. TEX. R. CIV. P. 192.3(b); *In re CI Host, Inc.*, 92 S.W.3d at 516–17; *In re Fisher & Paykel Appliances, Inc.*, 420 S.W.3d 842, 846–47 (Tex. App.—Dallas 2014, orig. proceeding); *In re Exmark Mfg. Co.*, 299 S.W.3d 519, 524 (Tex. App.—Corpus Christi 2009, orig. proceeding [mand. dism'd]).

In general, the rules require the responding party to serve a written response, including any objections to written discovery, within thirty days after service of a request

13

for production. *See* TEX. R. CIV. P. 193.2(a), 196.2(a). By rule, the party resisting discovery must make a timely objection to the discovery request or else the objection is waived. *See id.* R. 193.2(e); *In re BDPJ Houston, LLC*, 420 S.W.3d 309, 314 (Tex. App.— Houston [14th Dist.] 2013, orig. proceeding); *Young v. Ray*, 916 S.W.2d 1, 3 (Tex. App.— Houston [1st Dist.] 1995, orig. proceeding). However, the trial court can excuse the waiver for failing to timely object "for good cause shown." TEX. R. CIV. P. 193.2(e). Further, an objection may be amended or supplemented to state an objection that was inapplicable or unknown after reasonable inquiry when the original objection was made. TEX. R. CIV. P. 193.2(d); *In re Park Cities Bank*, 409 S.W.3d 859, 876–78 (Tex. App.— Tyler 2013, no pet.).

National Lloyds asserts that it has "never waived its claim to contest the request, but continually protested at every stage." However, in its responses and amended responses to these requests for production, National Lloyds did not object to the requests for production at issue on grounds that they sought irrelevant documents, or that they were overbroad, or that they constituted an "unreasonable fishing expedition." In fact, National Lloyds withdrew its objections to the discovery requests in question. National Lloyds did not request the trial court to excuse its failure to lodge these objections on any "good cause" shown. *See* TEX. R. CIV. P. 193.2(e). National Lloyds did not amend or supplement its objections to the discovery requests to include these objections. *See id.* R. 193.2(d). National Lloyds first raised any arguable objection on these grounds in its response to the plaintiffs' motion to enforce when it stated that "there are questions as to the relevance of this other information" and stated that "[i]n light of the Supreme Court of Texas' recent ruling in *In re National Lloyds Insurance Company*, as such, National Lloyds

14

re-asserts its relevancy, overbroad, and unduly burdensome objections as they relate to the production of information related to claims of third parties." We note that the only objection that National Lloyds "reasserted" was its objection that the discovery request was too burdensome, an objection it had previously withdrawn, and that it had not previously asserted the other objections. National Lloyds further contends that it preserved these issues when it sought reconsideration of the trial court's order "based on evidence explaining why the order was overbroad and compelled completely irrelevant information to the claims at hand."

National Lloyds had the duty to make a "complete response" to the requests for production "based upon all information reasonably available," subject to objections and asserted privileges. TEX. R. CIV. P. 193. Based upon the evidence before the trial court, the trial court acted within its discretion in concluding that the existence of the reports and documents at issue was reasonably available to National Lloyds given that its corporate representative testified extensively regarding their existence and usage. Accordingly, National Lloyds should have considered these documents in its responses and either produced the documents, or lodged appropriate objections to their production. *See id.* National Lloyds did neither. Because the mandamus record does not establish that National Lloyds objected to any specific discovery request on the grounds it now raises before the discovery responses became due, any objection to the relevance or breadth of the requests for production was waived. *See* TEX. R. CIV. P. 193.2(e); *In re BDPJ Houston, LLC*, 420 S.W.3d at 314; *Young*, 916 S.W.2d at 3.

Moreover, even if National Lloyds had properly objected and therefore preserved its complaints regarding the alleged overbreadth of the requests for production or the

15

relevance of the subject reports, we note that the record before the court contains conflicting evidence regarding this issue. Specifically, Boswell testified by deposition that he utilized the reports to manage his reserves and to manage employees and claims, but subsequently, by affidavit, testified that he did not. These direct contradictions, at the very least, create a question of fact regarding the matter, and the resolution of such questions are not within the province of a mandamus proceeding. *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding); *In re RH White Oak, LLC*, 442 S.W.3d 492, 500 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). Issues pertaining to disagreement about the quantum of weight that should be assigned to different aspects of the evidence presented below and the credibility of witnesses rest in the sound discretion of the trial court. *See In re M.C.W.*, 401 S.W.3d 906, 907 (Tex. App.—Amarillo 2013, orig. proceeding). Accordingly, under the circumstances present here, where the trial court's determination was based on conflicting evidence, mandamus relief is not appropriate. *See In re Angelini*, 186 S.W.3d at 560; *In re RH White Oak, LLC*, 442 S.W.3d at 500.

Given the foregoing, we overrule National Lloyds' first issue.

## V. SANCTION

In its second issue, National Lloyds asserts that it has been sanctioned for refusing to produce irrelevant reports when "the basis for the sanctions was an affidavit introduced for the first time at the hearing and not subject to cross examination." We note that National Lloyds' characterization of the rationale for the sanctions against it conflicts directly with the record evidence and the trial court's order itself. Plaintiffs sought sanctions against National Lloyds based on its failure to comply with the court's previous

16

discovery orders, and the trial court's order assesses "reasonable and necessary attorney's fees caused by National Lloyds' failure to comply with this Court's prior Orders Adopting Special Master Roberto Ramirez Recommendations No.9 and No. 11 dated July 16, 2014 and July 22, 2014." In assessing attorney's fees in the amount of $15,726.25, the court stated that it "finds that National Lloyds' failure to obey the Court's prior discovery orders was not substantially justified and that the aforementioned sanctions are just and appropriate under the circumstances and pursuant to Rule 215 of the Texas Rules of Civil Procedure."

We conclude that we need not address National Lloyds' second issue pertaining to the propriety of the monetary sanctions against it. Monetary sanctions are generally not subject to mandamus because they can be properly reviewed on appeal from a final judgment. *See* TEX. R. CIV. P. 215.2(b)(8); *Braden v. Downey*, 811 S.W.2d 922, 928–29 (Tex. 1991); *In re Noble Drilling (Jim Thompson), LLC*, 449 S.W.3d 625, 632 (Tex. App.— Houston [1st Dist.] 2014, orig. proceeding).

## VI. CONCLUSION

Having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, we conclude that mandamus relief is not appropriate. Accordingly, we lift the stay previously imposed in these cases. However, as in *In re CI Host*, the resolution of this discovery dispute may affect more than the immediate parties to this litigation. *See In re CI Host, Inc.*, 92 S.W.3d at 517. The trial court ordered National Lloyds to produce "all emails, reports attached to emails, and any follow-up correspondence and information related to those reports which were sent or received by a National Lloyds employee or any affiliated adjusting company employees."

17

Thus, production of the emails and reports may encompass data regarding claims other than those at issue in this original proceeding or data which could be considered confidential in nature. The possibility exists that the rights of others may be detrimentally affected by disclosure of some of the information in the reports. We are confident that the special master and the trial court will give due consideration to any privacy interests at stake as this case progresses and will take appropriate steps to ensure that those rights are protected, whether through the segregation of different categories of information or the entry of an appropriate protective order. *See id.* We deny the writ of mandamus without prejudice to allow the parties and the trial court to address these considerations as the case proceeds. *Id.*

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice


Delivered and filed the
29th day of May, 2015.